**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PAMELA STARR, ) | |
| ) | CASE NO. 1:13-cv-00327 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Pamela Starr ("Starr") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On June 25, 2007, Starr filed an application for POD, DIB and SSI alleging a disability onset date of March 26, 2003. Her application was denied both initially and upon reconsideration. Starr timely requested an administrative hearing. (Tr. 12.)

On July 15, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Starr, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 12.) On June 8, 2011, the ALJ found Starr was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 20.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-one (31) at the time of her administrative hearing, Starr is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 19.) Starr has a high school education and past relevant work as an ambulance driver and swim coach. (Tr. 19.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Starr was insured on her alleged disability onset date, March 26, 2003 and remained insured through December 31, 2007. (Tr. 14.) Therefore, in order to be entitled to POD and DIB, Starr must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Starr established medically determinable, severe impairments, due to "history of partial ACL tear left knee with arthroscopic repair, fibromyalgia, reflex sympathetic dystrophy, and degenerative disc disease of the cervical spine." (Tr. 14.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16.) Starr was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of

---

disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

3

light work. (Tr. 16, 19.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Starr was not disabled. (Tr. 19-20.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

Starr claims the ALJ erred by: (1) failing to grant appropriate weight to her treating physicians; and, (2) improperly assessing her credibility. (ECF No. 17.)

***Treating Physicians***

Starr argues the ALJ erred by failing to follow the treating physician rule and rejecting the

opinions of her treating physicians Richard L. Stein, M.D., and Irani Samaranayake, M.D. (ECF No. 17 at 10-14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On July 7, 2010, Dr. Samaranayake wrote a letter indicating that Starr was under her care for chronic fibromyalgia, depression, and migraines; that Starr remained symptomatic despite having been prescribed multiple medications; and, that she believed Starr was a "candidate for Social Security Disability because she is not able to function." (Tr. 981.) There is no merit to Starr's argument that the ALJ improperly rejected Dr. Samaranayake's opinion, as the question of whether a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute a medical opinion. 20 C.F.R. § 404.1527(d). An ALJ need not give any weight to a conclusory statement of a treating physician that a claimant is disabled, and may reject determinations of such a physician when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," as it is the Commissioner who must make the final decision on the ultimate issue of whether an individual is able to work. *See* 20 C.F.R. § 404.1527(d)(1); *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). Dr. Samaranayake's conclusion that Starr could not function and was a candidate for disability is not a medical opinion and is not entitled to any special weight.

On August 5, 2007, Dr. Stein completed a medical source statement concerning Starr's

7

physical capacity assessment. (Tr. 484.) Dr. Stein limited Starr to lifting/carrying five pounds occasionally based on her intermittent pain, and to standing/walking for fifteen minutes total in an eight-hour workday based on chronic knee pain. *Id*. Due to intermittent pain, he further limited Starr to a total of six hours sitting – in fifteen minute increments – in an eight-hour workday. *Id*. Nonetheless, she had not been prescribed an ambulatory aid. (Tr. 485.) Dr. Stein reported that Starr also required a sit/stand option and that she experienced severe pain. *Id*. On December 14, 2009, Dr. Stein completed a basic medical form which is largely illegible. (Tr. 890-92.) However, Dr. Stein clearly indicated that he believed Starr was limited to lifting/carrying five pounds occasionally; standing/walking for a total of fifteen minutes in 7.5 minute increments; and, sitting for a total of three hours in either one-half or one-third hour increments. (Tr. 891.)

The ALJ found that Starr could perform light work, except that she was limited to occasional climbing of ramps or stairs; occasional bending, balancing, and stooping; no kneeling or crawling; and, no exposure to extreme cold and hazards such as unprotected heights. (Tr. 16.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). As explained in Social Security Ruling 83-10, "[s]ince frequent lifting or carrying requires being on ones feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30,

1983 WL 31251 at * 6 ("Relatively few unskilled light jobs are performed in a seated position.")

As Dr. Stein limited to Starr to fifteen minutes of standing total and to lifting/carrying five pounds occasionally, the ALJ, in light of the RFC finding, necessarily rejected both Dr. Stein's opinion as it related to Starr's ability to stand/walk, as well as her ability to lift/carry. The RFC may also be inconsistent with Dr. Stein's December assessment, which limited Starr to three total hours of sitting.[3] First, the Court finds no issue with the ALJ's rejection of the drastic standing/walking limitations assessed by Dr. Stein. Despite such a serious limitation, the ALJ noted that Starr was never prescribed an ambulatory aid – an observation supported by Dr. Stein's own opinion. (Tr. 18.) In addition, as specifically noted by the ALJ, just two days after Dr. Stein's opinion, Starr reported that she walks her dog about one mile a day.[4] (Tr. 18, citing Exh. 28F at 10.) The Court sees nothing unreasonable about the ALJ's rejection of a standing/walking restriction that is so patently inconsistent with a claimant's self-stated daily activity.

However, the ALJ also rejected Dr. Stein's opinion that Starr could lift only five pounds occasionally. His opinion contains no explanation for this rejection. The Commissioner attempts to cure this deficiency by offering a *post hoc* rationale for the ALJ's opinion, indicating that Starr's doctors routinely indicated that she had full strength at 5/5 in her upper extremities.[5]

---

[3] While the ability to sit for only three hours may not be inconsistent with light work that entails five to six hours of standing/walking, it would preclude those light jobs that involve sitting most of the time.

[4] It bears noting that Starr's admission is not an isolated statement, as she also stated that she walks a mile a day in good weather in another medical report. (Tr. 722.)

[5] Moreover, as explained below, objective testing will usually yield normal results in fibromyalgia cases.

9

(ECF No. 18 at 13, *citing* Tr. 275-96, 424-36, 438, 446.)  Defense counsel's argument cannot be substituted for the reasons actually offered by the ALJ.  As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration."  *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

In addition, while expressly including fibromyalgia among Starr's severe impairments, the ALJ failed to include any discussion as to whether her fibromyalgia symptoms might account for the limitations assessed by Dr. Stein.  Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3 (6th Cir. 2007) (*quoting* Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed. 2005)).  Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses."  *Rogers*, 486 F.3d at 244 (*quoting Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988).  CT scans, x-rays, and minor abnormalities "are not highly relevant in diagnosing [fibromyalgia] or its severity."  *Id.*; *see also Preston*, 854 F.2d at 820.  "[P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and

10

neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion." *Id*. at 818. Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (*quoting Preston*, 854 F.2d at 820).

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that [the claimant] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med. J. 386 (1995); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 818 (6th Cir. 1988) (*per curiam*), but most do not and the question is whether [claimant] is one of the minority.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)

Therefore, objective medical evidence corroborating allegations of pain will most likely be nonexistent, resulting in even greater emphasis on the credibility of a claimant's subjective allegations of the severity of her pain. The ALJ, however, observed that, while there "are many opinions from the claimant's treating sources ... [n]one of these opinions are based on any objective evidence, and all rely heavily or solely on the claimant's subjective complaints," which the ALJ found not credible. (Tr. 17.) The ALJ expressly "reduced" the weight she ascribed to all of Starr's treating physicians "due to the lack of objective evidence ...." *Id*. The strong focus on the lack of corroborating tests and physical symptoms (*i.e.* lack of swelling, good range of

11

motion, lack of motor weakness) reveals a fundamental misunderstanding of the nature of the disease. (Tr. 30-32.) As such, the ALJ's reliance on the lack of corroborating tests and examination results to reject the opinion of Dr. Stein does not constitute a "good reason" in this context. It should not be surprising in a fibromyalgia case to find that a treating physician's notes do not contain objective tests that confirm a patient's limitations.

The Court finds that the ALJ erred by not giving good reasons for rejecting the lifting/carrying limitations assessed by Dr. Stein. The Court finds a remand is necessary, thereby affording the ALJ an opportunity to sufficiently explain the weight ascribed to the functional limitations assessed by Dr. Stein, Starr's treating physician. Starr's second assignment of error, which challenges the ALJ's credibility determination, is rendered moot and will not be addressed in the interests of judicial economy. Nonetheless, upon remand, the ALJ should consider Starr's fibromyalgia symptoms when determining her credibility.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: November 6, 2013